# IN THE COURT OF APPEALS OF IOWA

No. 19-1695
Filed August 5, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEREMY JOE ORFIELD,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Greene County, Dale E. Ruigh,

Judge.

        Jeremy Orfield appeals his conviction of indecent contact with a child.

**AFFIRMED.**


        Kevin Hobbs, West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee.


        Considered by May, P.J., Greer, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**MAY, Presiding Judge.**

A jury convicted Jeremy Lee Orfield of indecent contact with a child in violation of Iowa Code section 709.12(1)(a) (2018). The charge stemmed from allegations Orfield inappropriately touched a nine-year-old child. On appeal, Orfield claims (1) the district court erred in admitting hearsay evidence and (2) insufficient evidence supports his conviction. We affirm.

**I. Factual Background**

We summarize the evidence in a light favorable to the verdict. *See State v. Schiebout*, 944 N.W. 666, 670 (Iowa 2020).

When the child was nine years old, she lived with her mother, her mother's significant other, and her brother. The child's brother was friends with Orfield. Orfield was twenty-five years old.

One Saturday morning, the child was playing on her bed. She was wearing a shirt and underwear. The child's brother was sleeping upstairs. The child's mother was holding a garage sale at her best friend's house. And the mother's significant other was also out of the house.

Suddenly, Orfield walked into the child's room without knocking. He walked over to the child's bed. He asked for a hug. The child complied, but it made her feel "a little bit uncomfortable."

Orfield left to go to the bathroom. The child got out of bed, put on some shorts, and went to the living room "[t]o get away from" Orfield.

But Orfield "[f]ollowed" the child "to the living room." While the child watched television, Orfield charged his phone. Then Orfield used his phone to show her pictures of nude body parts.

Next, Orfield offered the child $5.00 to let him touch her inappropriately. The child did not agree. Even so, Orfield removed the child's shorts and underwear and touched her inappropriately.[1]

The inappropriate touching lasted "[l]ike two minutes." When he was done, Orfield gave the child a $5.00 bill and told her not to tell anybody. Then he left.

Soon after Orfield left, the mother's best friend arrived at the house. The child told the friend what had happened.[2] After hearing what happened, the friend took the child to her mother. The child then told her mother what happened.

Upon learning what Orfield did, the mother found Orfield and started hitting him. She told Orfield that he "touched my [child]." After the fight, the mother called police. The child had given the mother the $5.00 bill. The mother gave it to police.

A Jefferson police captain interviewed Orfield. At trial, the captain testified that Orfield presented multiple accounts of his interaction with the child. Orfield ultimately admitted he may have touched the child in a way that matched the child's version of events.

The jury convicted Orfield of indecent contact with a child. He appeals.

**II. Standard of Review**

"[W]e review hearsay claims for correction of errors at law." *State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016). We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

---

[1] Although we see no reason to publish the details here, we note the child's trial testimony provided a clear explanation of the inappropriate touching.
[2] The friend ultimately testified to some of what the child told her. Orfield's hearsay argument focuses on this testimony.

## III. Analysis

## A. Hearsay

At trial, Orfield raised a hearsay objection to the friend's testimony about what the child told her. Here is some of the relevant testimony:

> Q. What happened when you arrived at [the] house? A. I got there, and I started talking to [the child] about the garage sale. And she interrupted me.
> Q. I'll stop you there, [friend's name]. When [the child] interrupted you, how would you describe her demeanor? A. She was upset. She was—she was scared. She was anxious. Yeah.
> Q. At any point during your conversation did she start crying? A. Yes.
> Q. What did [the child] tell you? A. She told me that [Orfield] had made her feel uncomfortable and he was showing her pictures of naked women on his cell phone and telling her that—
> [Defense counsel]: Objection, Your Honor. At this point I think—
> THE COURT: I'm sorry. I did not—
> [Counsel]: I think this is all hearsay, Your Honor.
> THE COURT: The objection is overruled. You may continue with your answer.
> [Witness]: He was showing her pictures of naked women on the phone *and then telling her that there are other nine year olds that want to have sex with him*.
> Q. She said the defendant said that? A. Yes.
> . . . .
> Q. What did you do when [the child] told you those things? A. I told [the child] that [the child] should go change out of [the child's] pajamas into some day clothes so we could go to my house—the garage sale to talk to [the child's] mom.
> Q. What did [the child] do? A. [The child] went and changed [the child's] clothes, and then [the child] came back out and [the child] was crying and [the child] told me that [Orfield] had tried pulling her underwear and shorts down and tried touching her on her bottom part.
> Q. Did [the child] say anything else about why [the child] was upset? A. [The child] was—[the child] was scared. [The child] thought that [the child] was going to be in trouble from [the child's] mom because [Orfield] was [in the house].

(Emphasis added.)

On appeal, Orfield claims the court erred in overruling his objection to the friend's "testimony that [the child] told [the friend] that Mr. Orfield told [the child] that other nine year old girls want to have sex with him."[3] The State contends the child's statements were excited utterances and, therefore, properly admitted. The State also notes that, in any event, any error in admitting the statements was harmless given the strong evidence to support Orfield's conviction.

Our analysis begins with the law of hearsay. "Hearsay" is a statement that (1) was not made during testimony "at the current trial or hearing" and (2) is offered "into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). In general, hearsay is not admissible. Iowa R. Evid. 5.802. But "[h]earsay can be admitted when the proffered evidence falls within one of the numerous exceptions to the hearsay rule."[4] *State v. Veverka*, 938 N.W.2d 197, 199 (Iowa 2020).

One of those exceptions is for "excited utterances." It appears in Iowa Rule of Evidence 5.803(2), which states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>     . . . .

---

[3] On appeal, defendant also makes other arguments that were not raised at trial. We decline to address them. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

[4] In fact, subject to rule 5.403, a "district court has no discretion to deny the admission of hearsay if the statement falls within an enumerated exception." *Veverka*, 938 N.W.2d at 199 (citation omitted). "Conversely, a district court 'has no discretion to admit hearsay in the absence of a provision providing for it.'" *Id.* (citation omitted). "This is why we review rulings on hearsay for the correction of legal error." *Id.*

(2) *Excited utterance.* A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.

"The rationale behind the exception is that statements made under the stress of excitement are less likely to involve deception than if made upon reflection or deliberation." *State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009) (citation omitted).

> In determining whether a statement qualifies as an excited utterance, the trial court should consider:
> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*Id.* (citation omitted).

In this case, the parties agree the child's statement to the friend was hearsay. The fighting issue is whether it fell in the excited-utterance exception. We believe it did. Little time elapsed between the child's encounter with Orfield and the child's statement to the friend. And the statement was spontaneous—the child interrupted the friend to tell her what happened. Plus the child's young age— nine years old—and her shaken condition both suggest the child was in an excited state when she interrupted the friend. Indeed, the friend described the child as "upset," "scared," "anxious," and "crying." None of which is surprising given the troubling nature of the child's revelation—that Orfield told the child that other nine-year-old children wanted to have sex with him—and much more so, Orfield's recent physical behavior toward the child.

So the excited-utterance exception applies.  And the district court was right to overrule Orfield's hearsay objection.

## B.  Sufficiency of the Evidence

Orfield also claims insufficient evidence supports his conviction.  We disagree.

"Where, as here, the jury was instructed without objection, the jury instruction becomes law of the case for the purposes of reviewing the sufficiency of the evidence."  *State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018).  On the charge of indecent contact with a child, the jury was instructed "the State must prove all of the following elements":

> 1.  On or about the [xx]th day of [month], 20[xx], Jeremy Orfield with or without [the child's] consent, touched or fondled the inner thigh, groin, buttock, anus or breast of [the child.]
> 2.  Jeremy Orfield did so with the specific intent to arouse or satisfy the sexual desires of the defendant or [the child.]
> 3.  Jeremy Orfield was then 18 years of age or older.
> 4.  [The child] was then under the age of 14 years.
> 5.  The defendant and [the child] were not then married to each other.

On appeal, Orfield challenges only the second element.  He argues "the State offered no credible evidence that Mr. Orfield acted with a sexual purpose."

"Evidence is sufficient to support a conviction if, viewing it in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *State v. Polly*, 657 N.W.2d 462, 467 (Iowa 2003) (citation omitted).  In determining whether this standard has been met, we bear in mind that "[f]actfinders are allowed to rely on common knowledge, history, common sense, and experience and observations of the affairs of life."  *State v. Brice*, No. 19-0863, 2020 WL 3264401, at *4 (Iowa Ct.

App. June 17, 2020) (citing *State v. Stevens*, 719 N.W.2d 547, 552 (Iowa 2006)); *State v. Post*, 286 N.W.2d 195, 203 (Iowa 1979); *State v. Manning*, 224 N.W.2d 232, 236 (Iowa 1974)). Indeed, the jurors here were properly instructed that "[i]n considering the evidence, [they] may make deductions and reach conclusions which reason and common sense lead [them] to make." Moreover, "[i]n deciding the facts," they could "consider the evidence using [their] observations, common sense and experience."

With these principles in mind, we find ample evidence to support a finding that Orfield acted with a sexual purpose. The evidence showed Orfield was twenty-five years old when he entered the child's bedroom without invitation. He asked the child for a hug. He showed the child pornography. He offered the child money to let him touch the child inappropriately. He pulled down the child's shorts and underwear. Then he touched the child inappropriately for "[l]ike two minutes." When he left, he told the child not to tell anyone. From this evidence—and their common sense and experience as adults—the jurors could readily conclude Orfield's purpose was sexual.

## IV. Conclusion

The district court was right to overrule Orfield's hearsay objection. And ample evidence supports the jury's verdict. So we affirm.

**AFFIRMED.**